Charles E. STEWART, Executor of the Estate of Crete Stewart Myers, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 69–381.

United States District Court, W. D. Oklahoma.

June 24, 1970.

Russell Thompson, Lynn Bullis, and Ronald L. Howland, of Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, Okl., for plaintiff.

William R. Burkett, U. S. Atty., Givens Adams, Asst. U. S. Atty., Ben A. Douglas, and Eugene A. Sayere, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM OPINION

DAUGHERTY, District Judge.

Plaintiff seeks a refund of estate tax paid on a deficiency assessment in the Estate of Crete Stewart Myers. A timely claim for refund has been disallowed by the District Director, Internal Revenue Service, Oklahoma City, Oklahoma. The Court has jurisdiction of this action under 28 U.S.C.A. § 1346(a) (1). Venue

---

is proper pursuant to 28 U.S.C.A. § 1402(a).

The deceased, Crete Stewart Myers (Mrs. Myers), died on August 26, 1965 at the age of 64 years [1]. Mrs. Myers had a severe case of rheumatoid arthritis from 1948 until the time of her death. She received medical attention for the same, including medication by a hormone known as cortisone, such medication beginning in 1952. By 1954 she had developed a condition known as hypercortisonism which is a deterioration of the body due to loss of calcium in the bones and a retention of fluid in the body. It appears that it was not medically feasible to withdraw Mrs. Myers from cortisone even though the dosages were changed from time to time. She was cared for by a practical nurse. Her husband, Mr. M. T. Myers, Sr., died on January 11, 1963. There were two children of this marriage, M. T. Myers, Jr. and Janet Myers Taliaferro. Both children married and each had three children. In 1953 Mr. and Mrs. Myers made gifts to an irrevocable trust for the benefit of their two children which used up their lifetime gift tax exemptions. It was the policy of the family, as shown by this gift and by other gifts before and after, to make gifts between the children on an equal basis. At the death of Mr. Myers, Sr., in 1963, his son M. T. Myers, Jr. was indebted to his father for monies advanced to him in the sum of $50,000.00.

Mr. and Mrs. Myers lived in a large and fine home in Nichols Hills, Oklahoma, a suburb of Oklahoma City, which occupied approximately 4.5 acres of land. Mr. Myers looked after the yard and outside repairs of the property. After the death of Mr. Myers on January 11, 1963, Mrs. Myers was faced with the problem of how to take care of her residence as well as herself in the future without the help of her husband. The residential property was appraised in Mr. Myers estate at $90,000.00. During 1963, Mrs. Myers discussed the problem of her place and manner of living with her principal doctor as well as with her children, attorney Roy Lytle and an accountant. These discussions resulted in a plan promulgated by Mr. Lytle. Both children owned their own homes and were living in the same. Mrs. Myers with the advice of her doctor asked her daughter and son-in-law to live with her as a means of affording her better care and a more comfortable existence. The daughter and son-in-law agreed to such an arrangement. This, of course, required them to sell their home.

In these circumstances, Mrs. Myers decided to deed the home to her daughter and son-in-law and make a partial gift thereof to them with Mr. Myers, Jr. already indebted to his family for $50,000.00, the difference between this figure and the appraised value of the residence was $40,000.00. Mrs. Myers decided to make a gift to each of her children of said amount of $40,000.00, the $40,000.00 gift to her daughter being that part of the value of the residence and the equal gift to her son was covered by a $20,000.00 summer property in Wisconsin and $20,000.00 in stocks. This left each child owing the family $50,000.00, the son for monies advanced before the death of the father and the daughter for that portion of the residential property deeded to her. The $50,000.00 owed by the daughter was covered by a $50,000.00 note payable in ten years with the understanding that this note would be paid out of her share of her mother's estate which would offset the amount owed the family by the son in the same amount.

Attorney Lytle, being given the wishes of Mrs. Myers, set the gifts up by the use of a number of promissory notes given to Mrs. Myers by her children and spouses which she later forgave to them and their children. For the year 1963, she gave her daughter and son-in-law and their three children each $3,000.00

---

[1]. Her death certificate stated that cerebral thrombosis due to arteriosclerosis was the cause of death. Rheumatoid arthritis was listed as a significant condition contributing to her death, though not related to the cerebral thrombosis.

by this means and gave to her son and daughter-in-law and their three children each $3,000.00 by this means. This totaled a gift of $30,000.00 or $15,000.00 to each family in $3,000.00 increments for 1963. This total gift of $30,000.00 in 1963 to the ten recipients was gift tax exempt. For the year 1964, other such notes given to her by her children were forgiven as gifts to them and their children. By this means $25,000.00 was given to each of the families of her son and daughter for a total of gifts in that year in the amount of $50,000.00. Taking a $30,000.00 gift tax exemption for 1964, Mrs. Myers then paid gift tax in 1964 on the amount of $20,000.00 or the difference between her gift tax exemption and the total gifts. Such tax was in the sum of $1,323.75. Attorney Lytle testified that the note method so employed was his idea and not the idea of Mrs. Myers and that forgiving the notes as gifts in the total amount of $80,000.-00 in the years 1963 and 1964 rather than over a three year period was also his idea and not the idea of Mrs. Myers.[2]

The deficiency assessment of the Government was based on a determination that Mrs. Myers made each of the $40,-000.00 gifts to her children in contemplation of her death. It is the contention of the Plaintiff in this case that such gifts were not made by Mrs. Myers in contemplation of death, that the deficiency assessment is erroneous and that the estate tax paid thereon should be refunded to Plaintiff with interest.

Section 2035 of the Internal Revenue Code of 1954, 26 U.S.C.A. 2035, provides as follows:

"§ 2035. *Transactions in contemplation of death*

(a) *General rule.*—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an ade-

quate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

(b) *Application of general rule.*—If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death. Aug. 16, 1954, c. 736, 68A Stat. 381; Oct. 16, 1962, Pub.L. 87–834, § 18(a) (2) (C), 76 Stat. 1052."

In the case of United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867 (1931), the Supreme Court stated as follows:

"The words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is 'near at hand.'

If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive."

---

2. Mr. Lytle also prepared a new will for Mrs. Myers at or about this time. But no significance is attached to this as her

old will pre-dated the death of her husband that year and she needed a new will.

Thus, the problem before the Court under the evidence and all the facts and circumstances of this case, is whether the two $40,000.00 gifts to the families of her son and daughter were made by Mrs. Myers in contemplation of death within the meaning of the aforesaid law. The estate of Mrs. Myers upon her death amounted to approximately $400,-000.00. The gifts in controversy totalling $80,000.00 would, thus, amount to approximately 20 percent of her overall estate. She was approximately 62 years of age when the gifts were made and she died at the age of approximately 64. Approximately two years passed between her deciding to make the gifts and her ultimate death. She had been in very poor health for many years, but her condition had not changed significantly during 1963. Her illness was not a sudden thing but was chronic and she had lived with it for many years. The Court is of the opinion that the significant change occurring in that year which prompted the gifts was the death of her husband which created the problem of how she would manage the large home and how she would live and have its comforts. The Court is of the opinion and finds that the controlling motive behind the gifts was the result of the decision of Mrs. Myers, as well as her desire, to continue to live in her comfortable residence and have the close care and attention of her daughter and her husband. Realizing that this would require them to sell their home, it was a natural and logical consequence that she should give them her home—especially as they were to spend half its value for alterations.[3] To this must be coupled compliance with the family policy of long standing to equalize gifts and inheritances to the children—thus, the controlling motive behind the $40,000.00 gift to the son and his family and the $50,000.00 note from the daughter offsetting the $50,000.00 owed the family by the son. The Court, therefore, finds that the gifts in question were not made by Mrs. Myers in contemplation of death under the facts, circumstances and evidence herein. It is true that at the time of the gifts Mrs. Myers had a severe case of rheumatoid arthritis and had used cortisone apparently to the point that it had an adverse effect on her bony structure as well as her weight. But she had had this condition since 1948 and the unfortunate effects of the cortisone had been with her since 1954. She had learned to live with this condition. Furthermore, all who were close to her, including her doctor, lawyer, accountant and children, testified (and there was no testimony to the contrary) that Mrs. Myers appeared optimistic all the time and never talked about fear of death or the expectancy of death in the near future. She remained interested in current affairs even to the point of obtaining a special table to allow her to read and a qualification for records for the blind so that she could thereby hear novels and like material. This is to say that even though an invalid, the evidence shows she possessed an optimistic attitude and a keen interest in current affairs and the future.

The Court, therefore, determines from the evidence, facts and circumstances of

3. This becomes quite apparent from evidence revealing that when the decision was made and the move decided upon in the Spring of 1963, it was planned and understood that alteration and redecoration of the house would take place with the result that the house be divided into two separate living quarters one occupied by Mrs. Myers and her nurse and the other by the daughter and her family. Mrs. Myers spent about five or six thousand dollars of her money in altering and decorating her part of the house and the daughter and her husband spent approximately $45,000.00 of their money in altering their part of the house. This division of a single family house into two separate living facilities at an expenditure in excess of $50,000.00 does not lend support to a gift in contemplation of death. Rather, it signifies an intention of continued living by Mrs. Myers in her residence, but in altered condition to allow the living therein of two separate families. And at considerable expense, totaling over half the value of the property before alteration.

the case that in making the gifts involved Mrs. Myers was not contemplating death and her decision to make the gifts and her making of the gifts were motivated by purposes associated with life rather than with death, namely, her manner and method of living and care and policy of long standing to equalize gifts between her children. Accordingly, the Plaintiff is entitled to prevail herein and judgment should be entered in his favor in the appropriate amount. Counsel for Plaintiff will prepare an appropriate judgment based on the foregoing, submit the same to counsel for the Defendant and then present the same to the Court for signature and entry herein.